**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

A. DIAS RAMOS, et al.

v.                                                      :    Civil Action WMN-01-2742
                                                        :
TENNSMITH, INC.                                         :
                                                        :

**MEMORANDUM**

Before the Court is Defendant's Motion for Summary Judgment
(Paper No. 16).[1]  The motion has been thoroughly briefed and is
ripe for decision.[2]  Upon review of the pleadings and applicable
case law, the Court determines that no hearing is necessary

---

[1] Also before the Court are Defendant's Motion to Stay
Discovery, or Alternatively for Protective Order (Paper No. 17)
and Plaintiffs' Motion to File Surreply (Paper No. 25).  After
filing the motion to stay, parties stipulated that discovery be
stayed until the Court decides Defendant's Motion for Summary
Judgment.  Therefore, the Court will deny Defendant's Motion to
Stay as moot.  With respect to Plaintiffs' motion to file
surreply, the Court will grant Plaintiffs' motion and accept the
pleadings as filed because the surreply responds directly and
briefly to new material presented in Defendant's reply in support
of its motion for summary judgment.

[2] Plaintiffs submitted a Rule 56(f) affidavit with its
opposition to Defendant's motion for summary judgment.  In their
affidavit, Plaintiffs list contemplated discovery which they
believe would assist the Court in "appropriately reviewing
[Defendant's] Motion and supporting its denial and Plaintiffs
believe they are entitled to this discovery before the Court
grants [Defendant's] Motion."  Pls.' Exh. 1, Affidavit.  The
Court does not find this affidavit and request compelling.
Plaintiffs stipulated and agreed with Defendant that "discovery
shall be stayed until the Court decides Defendant['s] . . .
Motion for Summary Judgment."  Stipulation, Paper No. 18.  Having
voluntarily accepted to stay discovery, Plaintiffs cannot now
complain that they have insufficient information with which to
oppose Defendant's motion.

(Local Rule 105.6), and that summary judgment will be entered in favor of Defendants as to all counts.

## I.  BACKGROUND

At issue in this case are swing beam shears, which are large heavy pieces of equipment used to cut sheets of metal.  Plaintiff ADIRA is a Portuguese company that manufactures heavy equipment and machinery and distributes such items throughout the world through a network of distributors, including Plaintiff Comeq, Inc., ADIRA's exclusive distributor for the United States. Defendant, Tennsmith, is a family-owned business which is located in Tennesee and manufactures metal working machinery, including light and heavy gauge machines.

In 1992, Plaintiff ADIRA designed and manufactured its "GH" series of swing beam shears.  This series has never been patented.  In mid-1993, Plaintiff ADIRA shipped its first GH series swing beam shears to Plaintiff Comeq for sale in the United States.  Plaintiffs produced a nine-page brochure describing the GH series product in 1995.  In 1998, Defendant was considering developing its own line of press brakes and swing beam shears and performed patent searches and determined that neither ADIRA nor others held patent rights in and to swing beam shears.  Subsequently, Defendant designed and manufactured its

own swing beam shears in 1999.[3]  Defendant displayed its first

swing beam shear at a trade show in Chicago in November 1999 and

sold its first shear in March 2000.  As part of its marketing

efforts, Defendant produced an advertising brochure in or around

November 2000, describing its swing beam product.

Beginning in July 2001, counsel for Plaintiffs contacted

Defendant regarding the shear and brochure.  Correspondence was

traded between counsel, and this suit was eventually filed in

September 2001.  Plaintiffs' Complaint alleges four causes of

action: interference with prospective advantage (Count 1),

copyright infringement (Count 2), unfair competition (Count 3),

and Lanham Act violation, 15 U.S.C. § 1125 (Count 4).  Defendant

now moves for summary judgment as to all claims.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence before the court,

consisting of the pleadings, depositions, answers to

interrogatories, and admissions of record, establishes that there

---

[3] Defendant claims that it arranged to inspect an ADIRA
machine at its facility in Tennessee and also inspected the
literature of other manufacturers of swing beam shears.  Drawing
on these inspections, Defendant developed its swing beam shear.
Plaintiff argues that Defendant actually purchased an ADIRA
machine from a distributor and kept it in its Tennessee facility.
The distributor has produced documents in response to a subpoena
relating to this transaction, but Defendant has not produced any
such documents.  For purposes of deciding this motion, it makes
no difference whether or not Defendant just inspected a machine
at its facility or actually purchased one.

3

is no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law.  Fed. R. Civ.
P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
Rule 56 mandates the entry of summary judgment against a party
who, after reasonable time for discovery and upon motion, "fails
to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party
will bear the burden of proof at trial."  Id. at 322.
Furthermore, the mere existence of some factual dispute is
insufficient to defeat a motion for summary judgment; there must
be a genuine issue of material fact.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 247-48 (1986).

     In deciding a summary judgment motion, the court must view
the facts in a light most favorable to the non-moving party, see
Peck v. Baltimore County, 286 Md. 368 (1979), and must draw all
reasonable inferences in favor of that party.  See, Hill v.
Lewis, 21 Md. App. 121 (1974).  The non-moving party, however,
may not create a genuine issue of material fact through mere
speculation, or by building one inference upon another.  See,
Anderson, 477 U.S. at 255.

## III.  DISCUSSION

### A.  Interference with Prospective Advantage Claim

     Plaintiffs' first cause of action against Defendant is for
interference with prospective economic advantage.  In Maryland,

4

in order to succeed on a claim for wrongful interference with
economic relations, a plaintiff must establish that a defendant's
"wrongful or unlawful act caused the destruction of the business
relationship which was the target of the interference." Medical
Mutual v. Evander, 339 Md. 41, 54 (Md. App. 1995). Any claim for
tortious interference with business relations requires three
parties--the two parties to the contract and a third party who is
the "interferer." Henry v. Nat'l Ass'n of Air Traffic
Specialists, Inc., 836 F.Supp. 1204, 1210 (D. Md. 1993), aff'd 34
F.3d 1066 (4th Cir. 1994). In this case, Plaintiffs present no
evidence of an unlawful inducement. Plaintiffs' managing
director and president both testified that they were not aware of
the identity of any customers with whom Defendant interfered in
the selling of its swing beam shears. Pacheco Dep. at 208,
Lazinsky Dep. at 164. Because Plaintiffs fail to present any
evidence that Defendant interfered with a contract or
relationship, the Court concludes that summary judgment in favor
of Defendant is appropriate as to this claim.

B. Copyright Infringement Claim

In its second count, Plaintiffs claim that Defendant
obtained copies of Plaintiffs' marketing brochures and materials
and deliberately copied these materials "with the specific
intention of eliminating its own production efforts, to profit
from the successful efforts of Comeq, and to promote confusion

5

regarding the origin of Tennsmith's product."[4]  Com. at ¶ 20.  In

order to prove a case of copyright infringement, a plaintiff must

prove: "(1) ownership of a valid copyright, and (2) copying of

constituent elements of the copyrighted work that are original."

Feist Publ'n, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361

(1991).  The second requirement includes two steps in which the

plaintiff must prove (a) actual copying, usually by showing that

the defendant had access to the allegedly infringed work, and (b)

that the infringing work is substantially similar to the

protected expression in the copyrighted work.  Towler v. Sayles,

76 F.3d 579, 581-82 (4th Cir. 1996).

     In the instant case, the only registered copyright claimed

by Plaintiffs is a compilation copyright in a collection of sales

brochures.[5]  These sales brochures contain facts describing

various aspects of Plaintiffs' products.  Because the copyright

registration does not identify the constituent brochures as

having copyright protection, Plaintiffs cannot claim such

protection in the underlying works themselves.  See 17 U.S.C. §

103(b) (stating that compilation work "does not imply any

---

[4] Plaintiffs allege that Defendant's October 2000 brochure
infringes its copyright.

[5] The Certificate of Registration describes the copyrighted
material as a "compilation of product brochures and product
information."  Pls.' Exh. 10, Certificate of Registration at ¶
2(b).

6

exclusive right in the pre-existing material").

Subsequent to filing this action, Plaintiffs made a
Supplemental Registration in the United States Copyright Office
to cover each of the constituent sales manuals. Pls.' Exh. 10,
Form CA. While Plaintiffs argue that this Supplemental
Registration "effectively eliminates" Defendant's arguments, the
Court disagrees and notes that 17 U.S.C. § 408(d) specifically
states that, "the information contained in a supplementary
registration augments but does not supercede that contained in
the earlier registration." Because Plaintiffs' Supplemental
Registration is dated May 28, 2002, and operates only
prospectively, and the alleged infringing brochure was generated
in October 2000, the Court concludes that the Supplemental
Registration does not cover the 2000 brochure. Because
Plaintiffs fail to satisfy the first element of copyright
infringement, proof of ownership of a valid copyright, summary
judgment will be entered in favor of Defendant as to this claim.

## C. Unfair Competition Claim

Plaintiffs pursue their unfair competition claim against
Defendant under the Maryland Consumer Protection Act. Md. Comm.
Law Code Ann. § 13-101 et seq. Defendant is correct that the
cause of action for unfair competition under Maryland law is no
different in substance than that under the Lanham Act, 15 U.S.C.
§ 1125(a). Scotch Whisky Ass'n v. Majestic Drilling Co., Inc.,

958 F.2d 594, 597 (4th Cir. 1992). Under both schemes, the party
asserting the unfair competition claim must show a likelihood of
confusion as to the product's origin. Id. The determination of
whether the likelihood of confusion exists involves an
examination of a variety of factors, including (1) the
distinctiveness of the senior mark, (2) the similarity of the
marks, (3) the similarity of goods or services the marks
identify, (4) the similarity of facilities employed by the
parties to transact their business, (5) the similarity in
advertising used by the parties, (6) the defendant's intent in
adopting the same or similar mark, (7) actual confusion, (8) the
quality of the defendant's product, and (8) the sophistication of
the consuming public. Sara Lee Corp. v. Kayser-Roth Corp., 81
F.3d 455, 463 (4th Cir. 1996), cert. denied 519 U.S. 976 (1996).
No factor is dispositive and separate consideration is given to
each factor.

Plaintiffs do not offer a lot of evidence on this issue.
They argue that they "are certainly entitled to an inference that
the trade dress of the machine was extremely strong and popular .
. . ." Pls.' Opp. at 16. Further, they claim several times that
Defendant "obviously" copied the machine's trade dress, but
Plaintiffs have identified no evidence that this actually
occurred, nor have Plaintiffs produced any graphic or pictorial
evidence supporting such statements. Defendants argue that

8

Pacheco, Plaintiffs' own managing director, has no evidence that a customer has been misled into buying Defendant's machine thinking it was one of Plaintiffs' machines, and Pacheco testified that he has not heard from anyone else in the industry that this has happened. Pacheco Dep. at 152, 186; see also, Lazinsky Dep. at 112, 164 (testifying to the same facts). In addition, the swing beam shears at issue are not typical consumer purchases. They are single-purchase, high-priced items, on which each manufacturer prominently displays its name. Because Plaintiffs fail to provide any evidence of actual confusion and make a weak showing on other factors relevant to a likelihood of confusion, this Court concludes that the likelihood of confusion between the two competing products is minimal, and that Plaintiffs do not satisfy their burden to show unfair competition.

D. Trade Dress Claim

Plaintiffs argue that their claim of Lanham Act infringement pursuant to 15 U.S.C. § 1125 arises from Defendant's alleged infringement of Plaintiffs' protected trade dress rights in their hydraulic swing beam shear product. Plaintiffs claim that Defendant "has copied the nonfunctional design of ADIRA's shear and numerous of its components as well as its marketing and sales literature." Com. at 6. Section 43(a) of the Lanham Trade-Mark Act, 15 U.S.C. § 1125(a), gives a manufacturer protection against

9

the use by any person of "any word, term name, symbol, or device, or any combination thereof . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods." That protection may attach not only to the packaging of a product, but also to the design or configuration ("trade dress") of a product. See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209 (2000). A plaintiff may recover for trade dress infringement only by proving: "(1) that its trade dress is either (a) inherently distinctive[6] or (b) has acquired secondary meaning so that it is perceived as identifying and distinguishing the source of the goods; (2) that its trade dress is nonfunctional; and (3) that [the defendant's] trade dress is likely to cause confusion among the relevant purchasing public." X-It Products v. Walter Kidde Portable Equipment, 155 F.Supp.2d 577, 617 (E.D. Va. 2001) (citing Prufrock Ltd. v. Lasater, 781 F.2d 129 (8th Cir. 1986)). The Fourth Circuit has cautioned that trade dress infringement cases generally involve "heavily disputed facts," and are therefore "not ordinarily amenable to summary judgment." Id. at 620 (citing Ashley Furniture Indus. v. Sangiacomo N.A., 187 F.3d 363, 377 (4th Cir. 1999)) (other citations omitted). Summary judgment is

---

[6] The United States Supreme Court recently held that in cases for product design infringement, as opposed to product packaging cases, a product's distinctiveness may be proved only upon a showing of secondary meaning. Wal-Mart, 529 U.S. at 216.

10

appropriate, however, if the plaintiff fails to come forward with admissible evidence sufficient to raise a genuine issue for trial.

The Supreme Court has stated that if a plaintiff's alleged trade dress is determined to be functional, then "secondary meaning is irrelevant because there can be no trade dress protection in any event. . . ." TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 26 (2001). Therefore, the Court will first examine the issue of functionality. A plaintiff who seeks to recover for trade dress infringement bears "the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). The Supreme Court recently adopted the "traditional" approach to determining whether a feature is functional, and therefore not eligible for trade dress protection. TrafFix Devices, 532 U.S. at 32. A feature is functional when any of the following is true: "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." Id. (quoting Qualitex Co. v. Jacobson Products Co., Inc., 514 U.S. 159, 165 (1995)).

Plaintiffs' Complaint and Opposition to Defendant's Motion for Summary Judgment emphasize that Plaintiffs allege trade dress rights in the "overall appearance and design" of the ADIRA swing beam shears. To determine whether a product as a whole is functional, courts apply several factors: "the existence of the

11

utility patent disclosing the utilitarian advantages of the design; advertising materials which tout the design's utilitarian advantage; the availability of alternative designs; and facts which indicate that the design results in a comparatively simple or cheap method of manufacturing the product." Valu Engineering, Inc. v. Rexnord Corp., 278 F.3d 1268, 1274 (Fed. Cir. 2002) (quoting In re Morton-Norwich Products, Inc., 671 F.2d 1332, 1340-41 (C.C.P.A. 1982)); see also, New England Butt Co. v. U.S. Int'l Trade Comm'n, 756 F.2d 874, 877-79 (Fed. Cir. 1985) (analyzing first the components of a machine to determine the functionality of each feature as reflected in the machine's overall appearance and then applying these "Morton-Norwich" factors to the overall configuration of the machine).

Attention is focused first on the features of the swing beam shear that Plaintiffs allege are non-functional. In the Complaint, Plaintiff describes the "overall appearance and size and details in the frame, the blade gap adjustment system, the gear system with pinion and 'half gear wheel', the back gauge movement system, the numerical panel controls, and the color of the machine" as nonfunctional features. Com. at ¶ 9. Additionally, in correspondence from Plaintiffs' attorney to defense counsel, "locking device and hand lever, the bar on the table to guide the squaring arm, the table system, jack bolts and the appearance of the hold downs" were described as "distinctly

12

ADIRA concepts." Def.'s Exh. 16, May 3, 2002 Letter. Jose
Pacheco, managing director of ADIRA, and Steve Lazinsky,
president of Comeq, also identified similar features of the
machine as non-functional and distinctive. See Pacheco Dep. at
91-94; Lazinsky Dep. at 68-69.

Interestingly, Plaintiffs' advertising brochure to customers
describes essentially all of these same features as "functional."
Def.'s Exh. 7, Brochure. Furthermore, Pacheco testified that
each one of the features that he had described as non-functional
was essential either to the use of purpose of the swing beam
shear or affected the cost or quality of the product. Pacheco
Dep. at 96-99. Pacheco testified that no aspect of the machine
was designed only to create a distinctive appearance. Id. at
163. Lazinsky testified that if a part on the shear was changed,
the change would alter the entire machine, because the machine
works in one unit. Lazinsky Dep. at 79. Based on Plaintiffs'
advertising brochure and the testimony of its managing director
and president, this Court finds that the specified features, as
reflected in the shear's overall appearance, are functional.

Next, the Court will examine the machine's overall
configuration "to see if the particular design is functional, by
turning to the analysis set forth in Morton-Norwich." New
England Butt, 756 F.2d at 878. First, "[t]here were never any
patents, utility or otherwise issued regarding the design of the

13

shear." Pls.' Opp. at 12. With respect to the second Morton-Norwich evidentiary factor, this Court finds that the advertising brochure promotes the utilitarian features of the machine to its customers, and it "does not emphasize nonfunctional features or claim that nonfunctional features identify [ADIRA] as the source of the [shear]." New England Butt, 756 F.2d at 878-79. The advertising brochure provided to the Court is an eight-page brochure. Most of the brochure is devoted to describing the "constructive and functional aspects" of the shear. Def.'s Exh. 7, Brochure. Nowhere in the brochure are nonfunctional features highlighted, and in fact, the names ADIRA and Comeq appear on only three pages, the first, second, and last. Id. This Court concludes that the record shows a "promotion of utilitarian features." New England Butt, 756 F.2d at 879.

Regarding the third Morton-Norwich factor, Plaintiffs have failed to show the existence of viable alternative shear designs. Plaintiffs and Defendant have identified over twenty-five different manufacturers of swing beam shears and have provided pictures of almost all of those manufacturers' shears. See Pls.' Exh. 9 and Def.'s Exh. 18-25. Plaintiffs argue that the different shears "look nothing like ADIRA's shear" and that all the shears are very different in appearance. Pls.' Opp. at 13. Plaintiffs do not, however, identify specifically what is different among the shears. The Court, after examining the

14

pictures, does not conclude that the shears are all very different in appearance. The swing beam shears all have a similar shape, and from a side view, resemble the letter "L". According to Pacheco, all swing beam shears have a blade that pivots in an arc to cut the sheet metal, a basic frame on which the pivot mechanism sits at a center point, a table or resting point where the sheet metal sits as it is being fed into the machine for cutting, foot switches, and controls. Almost all swing beam shears have hydraulic systems; most have blade gap adjustments, back gauges, and back gauge motors. All of these features are necessary features to the working of the product. Pacheco Dep. at 71-73.

Finally, with respect to the fourth Morton-Norwich factor, although neither side submitted evidence that directly indicated that the design resulted in a comparatively simple or cheap method of manufacturing the product, in Pacheco's deposition, he testified that the "paramount" concept in creating the design was to integrate economical and safety concerns into the design. Pacheco Dep. at 163 (emphasis added). This statement provides evidence that the features simplified and reduced the cost of the design. The above conclusions compel a finding that Plaintiffs cannot demonstrate that the overall arrangement of the features in the shears is nonfunctional.

In addition to the nonfunctional requirement, the trade

15

dress must also be distinctive or have acquired secondary
meaning, and there must be a likelihood of confusion with the
accused product. X-It Products, 155 F.Supp.2d at 617. As stated
above, the Supreme Court has stated that if a plaintiff's alleged
trade dress is determined to be functional, then "secondary
meaning is irrelevant because there can be no trade dress
protection in any event. . . ." TrafFix Devices, 532 U.S. at 26.

Finally, the Court has examined the last requirement of
trade dress: the likelihood of confusion with the accused
product. Plaintiffs bear the burden of showing confusion. Dorr-
Oliver, Inc. v. Fluid-Quip, Inc., 94 F.3d 376, 383 (7th Cir.
1996). The standard for showing confusion in a trade dress
action is the same as the confusion standard for an unfair
competition action. See 15 U.S.C. § 1125(a). The Court
incorporates its previous discussion with respect to the
likelihood of confusion and concludes that Plaintiffs do not
satisfy their burden to show any trade dress violation.

## IV.  CONCLUSION

For the foregoing reasons, this Court will grant Defendants'
Motion for Summary Judgment as to all counts. A separate order
will issue.

William M. Nickerson
Senior United States District Judge

October 23, 2002

16